1
2
3
4
5
6                          UNITED STATES DISTRICT COURT

7                        SOUTHERN DISTRICT OF CALIFORNIA

8

9   DARREN VINCENT FORD,                    Case No.:  16cv1126-LAB (BLM)

10                          Plaintiff,       **REPORT AND RECOMMENDATION FOR
                                             ORDER GRANTING DEFENDANTS'
11  v.                                       MOTION TO DISMISS PLAINTIFF'S
                                             COMPLAINT;**
12  J. LEWIS, DANIEL PARAMO, and H.
    GREENWALD,                               **AND**
13
                           Defendants.       **ORDER DENYING PLAINTIFF'S
14                                           MOTION FOR PRODUCTION OF
                                             DOCUMENTS.**
15

16

17                                           **[ECF Nos. 27, 43]**

18

19

20        This Report and Recommendation is submitted to United States District Judge Larry A.

21  Burns pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and 72.3(f) of the United

22  States District Court for the Southern District of California.  For the following reasons, the Court

23  **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED** and **DENIES** Plaintiff's

24  motion for the production of documents.

25                          **PROCEDURAL BACKGROUND**

26        On April 22, 2016, Plaintiff Darren Vincent Ford, a state prisoner proceeding *pro se* and

27  *in forma pauperis*, filed a complaint under the Civil Rights Act, 42 U.S.C. § 1983, against

28  Defendants Lewis, Paramo, and Greenwald in the Eastern District of California.  ECF No. 1

                                      1

("Comp."). On May 6, 2016, United States Magistrate Judge Craig M. Kellison determined that venue was proper in the Southern District of California and transferred the matter to this Court. ECF No. 7. Plaintiff alleges claims under the Fourth, Eighth and Fourteenth Amendments. Comp. at 2-5. Plaintiff served Defendants Paramo and Greenwald, but has not served Defendant Lewis. ECF Nos. 21, 22, 23.

On August 17, 2016, Defendants filed a Motion to Dismiss the Complaint for Failure to State a Claim for Which Relief May be Granted. ECF No. 27 ("MTD"). On that same day, the Court set a briefing schedule ordering Plaintiff to file his opposition on or before September 21, 2016, and Defendants to file their reply on or before October 12, 2016. ECF No. 28. On September 13, 2016 and September 14, 2016, Plaintiff filed motions for extension of time to file an opposition to Defendants' motion to dismiss. ECF Nos. 30, 32. The motions were accepted on discrepancy on September 26, 2016. ECF Nos. 29, 31. On the same day, the Court granted Plaintiff's motions and ordered Plaintiff to file his opposition on or before October 21, 2016, and Defendants to file their reply on or before November 14, 2016. ECF No. 33. On September 15, 2016, the date of Plaintiff's signature, Plaintiff filed his opposition. ECF No. 34 ("Oppo."). Defendants did not file a reply. See Docket.

On October 23, 2016, Plaintiff filed a motion, entitled "Plaintiff, for the Request of the Production of Extremely Important Documents that Defendant Exacerbating Them Will be More Helpful than not. These Forms Shall be Amass from Defendants H. Greenwald; Daniel Paramo; J. Lewis." ECF No. 43. The motion was accepted on discrepancy on November 8, 2016. ECF No. 42. Plaintiff's motion requests the production of several documents and answers to several questions. ECF No. 43. Specifically, Plaintiff requests Defendants to produce "all the documents and case-laws that allows the defendants to violate" various penal codes, to explain "why the Defendants find it ambivalence not to discuss the reasoning to violate" various Welfare and Institution Codes, to produce a "Sexual Violent Predator Unit Report," and to "answer" various Government Codes. Id. at 2, 5, 15. In support, Plaintiff states that he is entitled to discovery and that Defendants have objected to Plaintiff's discovery requests. Id. at 1-2. Plaintiff provided no proof of propounding discovery upon Defendants, nor did he provide proof of Defendants'

objections.  See id.  Further, the Court has explained to Plaintiff that because Defendants have not answered Plaintiff's complaint, the Court has not yet opened discovery.  ECF No. 37 at 1.  After the Court's initial explanation that discovery had not yet opened, Plaintiff filed a motion to extend time to file a brief for the production of documents.  ECF No. 39.  The Court again explained to Plaintiff that discovery has not been opened, which means that neither party can conduct discovery at this time.  ECF No. 40 at 2.  The Court clarified that this means Plaintiff "may not conduct discovery now."  Id.  Despite the Court's efforts to explain that discovery has not begun, Plaintiff continues to file motions relating to discovery.  See ECF No. 41 (Order rejecting on discrepancy Plaintiff's motion for extension of time to file discovery brief); see also ECF No. 42.  Plaintiff's instant motion for the production of documents is premature because Defendants have not answered Plaintiff's Complaint, and therefore the Court has not opened discovery.  Accordingly, Plaintiff's most recent motion for the production of documents [ECF No. 43] is **DENIED** as premature.  The Court will now address Defendants' motion to dismiss.

## **COMPLAINT ALLEGATIONS**

Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the complaint, and must construe the complaint and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff.  See Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).

Plaintiff is currently incarcerated at California State Prison – Sacramento.  MTD at 1.  Plaintiff was convicted of two counts of annoying or molesting a child, pursuant to California Penal Code § 647(c)(2), and is serving two 25-years-to-life sentences.  MTD at 1; Comp. at 4.  Plaintiff's complaint alleges that Defendants Greenwald, Paramo, and Lewis – officials at Richard J. Donovan Correctional Facility ("RJD") — violated his Eighth, Fourteenth, and Fourth Amendment rights.  Comp. at 3-5.  According to the complaint, Plaintiff was denied adequate mental health care, constituting cruel and unusual punishment and violating his due process and Fourth Amendment rights.  Id.  Specifically, Plaintiff alleges that Defendants Lewis, Paramo, and Greenwald purposely denied Plaintiff's requests to receive mental health care treatment as a mentally disordered sex offender ("MDSO"), sexually violent predator ("SVP"), and member of

the sex offender commitment program ("SOCP").  Id.  Plaintiff alleges that he has "uncontrollable sexual urges, pedophilia, ruminating thoughts of child molestation and other sexual urges consisting of touching his cell[mate] in private areas while he is asleep, or drawing[] . . . adults sexually molesting children."  Id. at 3.  Plaintiff informed his Interdisciplinary Treatment Team ("IDTT") of his sexual urges and desire to seek mental health treatment, but Plaintiff never received continuing treatment specifically designed for sex offenders.  Id.; Oppo. at 31.  Plaintiff alleges that without treatment, he fears he will become suicidal and will be a danger to himself or society if he is released from prison.  Id.  Plaintiff alleges that his underlying criminal charges should have resulted in a civil commitment for an indeterminate period at a state mental hospital, where he would have received appropriate mental health care, instead of being imprisoned.  Id.  Plaintiff alleges that his imprisonment at RJD is unjust because the California Department of Corrections and Rehabilitations ("CDCR") does not offer sex offender treatment and "being a sex offender in prison is real bad."  Id. at 3-4, 13.  Plaintiff alleges that being a sex offender in prison is "disastrous" for his well-being because other inmates and prison staff emotionally and physically abuse Plaintiff, including beating, stabbing, and raping him.  Id. at 4.  Plaintiff alleges that being transferred to a state mental hospital would permit Plaintiff to get sex offender mental health treatment and would be a safer environment for him.  Id.

Plaintiff was initially interviewed by C.L. Daub, Ph.D., the Senior Psychologist Supervisor at RJD on August 30, 2015.  Id. at 24.  During the interview, Plaintiff "explained that the court had classified [him] as [an MDSO] and that [he was] seeking an [SOCP]."  Id.  Mr. Daub commended Plaintiff for his interest in receiving sex offender treatment, but informed Plaintiff that CDCR does not offer sex offender treatment or transfer prisoners to a state mental hospital for such treatment.  Id. at 24-25.  Further, Plaintiff's IDTT determined on June 23, 2015 that Plaintiff did not meet the criteria for a higher level of mental health care.  Id. at 25.  As such, Mr. Daub informed Plaintiff that he would continue to receive Enhanced Outpatient Program ("EOP") services and that his IDTT would continue to evaluate Plaintiff's need for a higher level of care at least every 90 days.  Id.  Mr. Daub also informed Plaintiff that he could be placed at a state mental hospital for civil commitment as an SVP upon parole if the Board of Parole

Hearings ("BPH") SVP unit reviews his background and history and determines that Plaintiff should be referred to the Department of State Hospitals ("DSH")[1] for clinical evaluations.  Id.  If the DSH determines that Plaintiff is an SVP, then the DSH would refer Plaintiff's case to the District Attorney, who could petition the courts for civil commitment to receive SVP treatment provided by DSH.  Id.  If the District Attorney does not petition the court and Plaintiff were to be released to parole, Plaintiff could receive treatment in a community facility which specializes in SVP treatment as a condition of parole.  Id.

Plaintiff appealed the decision denying him sex offender treatment or a transfer to a state mental hospital, explaining that he "has a serious addiction towards children sexually and wants to receive help/treatment."  Id.  California Correctional Health Care Services ("CCHCS") received Plaintiff's second level appeal on October 23, 2015.  Id.  On October 30, 2015, Defendant Greenwald, Chief of Mental Health at RJD denied Plaintiff's second level appeal for the same reasons Plaintiff's initial request had been denied.  Id.

Plaintiff appealed Defendant Greenwald's denial to CCHCS and again requested to be transferred to a state mental hospital to be treated as an MDSO.  Id. at 27.  Defendant Lewis, who has not been served, denied Plaintiff's appeal.  Id.  Defendant Lewis explained that Plaintiff's Unit Health Record indicates that he is enrolled in the Mental Health Services Delivery System at the EOP level of care and has been provided with the opportunity to access mental health services and clinical staff on a routine basis.  Id.  Further, Plaintiff's IDTT determined that Plaintiff did not meet the criteria for DSH level of care on June 23, 2015, September 18, 2015, and October 16, 2015.  Id.  Defendant Lewis concluded that Plaintiff is receiving the appropriate level of care and treatment.  Id. at 28.  Defendant Lewis' denial fully exhausted Plaintiff's administrative remedies.  Id.

Plaintiff alleges that Defendant Paramo, as warden of RJD, is aware of Plaintiff's requests to seek sex offender treatment and refuses to provide him with the appropriate mental health

---

[1] For the purposes of this Report and Recommendation, "state mental hospital" and "DSH facility" are interchangeable.

care.  Id. at 5.  Plaintiff also explains that Defendant Paramo is aware of Plaintiff's other health issues.  Id.  In addition to being an MDSO, Plaintiff has HIV, Hepatitus C, degenerative joint disease, two fusions in his spine, and neuropathy in his feet.  Id.  Plaintiff alleges that because of his various physical and mental health issues, Defendant Paramo knows that he should be transferred to a DSH facility.  Id.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. See Fed. R. Civ. P. 12(b)(6).  The issue is not whether the plaintiff ultimately will prevail, but whether he has properly stated a claim upon which relief could be granted.  Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003).  In order to survive a motion to dismiss, the plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  If the facts alleged in the complaint are "merely consistent with" the defendant's liability, the plaintiff has not satisfied the plausibility standard.  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 at 557).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

When a plaintiff appears pro se, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).  This rule of liberal construction is "particularly important" in civil rights cases.  Henderson v. Ramsey, 528 F. Supp. 2d 1058, 1063 (S.D. Cal. 2007) (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992));

16cv1126-LAB (BLM)

see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (stating that because "*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter the courts' treatment of *pro se* filings; accordingly we continue to construe *pro se* filings liberally . . . ."  This is particularly important where the petitioner is a *pro se* prisoner litigant in a civil rights matter). When giving liberal construction to a *pro se* civil rights complaint, however, the court is not permitted to "supply essential elements of the claim [] that were not initially pled." Easter v. CDC, 694 F. Supp. 2d 1177, 1183 (S.D. Cal. 2010) (quoting Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982)).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id. (quoting Ivey, 673 F.2d at 268).

The court should allow a *pro se* plaintiff leave to amend his or her complaint, "unless the pleading could not possibly be cured by the allegation of other facts." Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (internal quotation marks and citations omitted).  Moreover, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." Ferdik, 963 F.2d at 1261.

## DISCUSSION

Defendants argue that Plaintiff's claims should be dismissed for the following reasons: (1) Plaintiff fails to state a cognizable claim of deliberate indifference under the Eighth Amendment, (2) Plaintiff's claim that his Fourteenth Amendment rights were violated is redundant and duplicative of his claim arising under the Eighth Amendment, (3) the Court lacks jurisdiction to grant the injunctive relief Plaintiff requests and the Defendants lack the authority to carry out such an injunction, (4) Defendants are entitled to immunity under the Eleventh Amendment for their actions, and (5) Defendants are entitled to qualified immunity for their actions.  ECF No. 27 at 2.  Plaintiff disputes Defendants' arguments. See Oppo.

### A. Eighth Amendment Deliberate Indifference to Medical Care Claim Against Defendants Paramo and Greenwald

The Eighth Amendment to the United States Constitution protects prisoners against cruel

and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal citations and quotation marks omitted). To withstand a motion to dismiss an Eighth Amendment claim, Plaintiff must show that he is "incarcerated under conditions posing a substantial risk of serious harm," or that Defendants have deprived Plaintiff of "the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). The Eighth Amendment includes the right to adequate physical and mental health care. Doty v. Cnty. Of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

To state an Eighth Amendment claim for deliberate indifference to medical needs, a prisoner must satisfy both an objective and a subjective requirement. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002). The objective requirement is satisfied so long as the prisoner alleges facts to show that his medical need is sufficiently "serious" such that the "failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain." Id. (internal quotation marks and citation omitted); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc). The subjective component requires the prisoner to allege facts showing the requisite culpable mental state, specifically, "deliberate indifference to a substantial risk of serious harm." Farmer, 511 U.S. at 836. Deliberate indifference "entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. The indifference must be substantial, and inadequate treatment due to malpractice, or even gross negligence, does not rise to the level of a constitutional violation. Estelle, 429 U.S. at 106. Indifference "may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Tracey v. Sacramento Cnty. Sheriff, 2008 WL 154607, at *2 (E.D. Cal. Jan. 15, 2008) (quoting Hutchinson v. U.S., 838 F.2d 390, 392 (9th Cir. 1988)).

Here, Defendants do not challenge the sufficiency of Plaintiff's allegations as to the objective prong. See Oppo. at 8-11. Rather, Defendants argue that Plaintiff has not stated a claim because he has not alleged that either Defendant acted with deliberate indifference. Id.

Defendants further argue that Plaintiff's allegations against Defendant Paramo are improperly based on *respondeat superior* and the factual allegations against Defendant Greenwald are limited to his denial of Plaintiff's grievance at the second level of review, which cannot constitute an Eighth Amendment violation.  Id. at 9-10.  Finally, Defendants argue that Plaintiff's allegation against Defendant Greenwald at most constitutes a difference of opinion regarding appropriate medical treatment.  Id. at 11.

### 1. Defendant Paramo

Plaintiff alleges that Warden Paramo was deliberately indifferent because he knew Defendant Greenwald denied Plaintiff's request seeking a specific type of mental health treatment and a transfer to a state mental hospital.  Oppo. at 20-21.  Plaintiff explains that Defendant Paramo is "implicated" because he is Defendant Greenwald's supervisor.  Id. at 21.  Defendants assert that "Plaintiff does not allege that Warden Paramo personally denied his requests for a particular type of medical treatment" and "states no facts to show that Warden Paramo" knew of Plaintiff's requests for a particular type of medical treatment.  MTD at 9.  Defendants, thus, explain that "Plaintiff's claims against Warden Paramo appear to be based solely on Warden Paramo's position as the Warden at RJD," which, in essence, is a *respondeat superior* claim.  Id. at 4.

To state a claim for a constitutional violation under Section 1983, a plaintiff "must plead facts sufficient to show that her claim has substantive plausibility."  Johnson v. City of Shelby, Miss., 135 S.Ct. 346, 347 (2014) (citing Twombly, 550 U.S. at 544; Ashcroft, 556 U.S. at 662).  Government officials are not liable under Section 1983 for their subordinates' unconstitutional conduct based on *respondeat superior* or another theory of vicarious liability, and plaintiff is required to plead that "each Government-official defendant, through the official's own individual actions, has violated the Constitution."  See Iqbal, 556 U.S. at 676 (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (finding no vicarious liability for a "municipal person" under 42 U.S.C. § 1983)).

A supervisor may be individually liable under Section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection

9

between the supervisor's wrongful conduct and the constitutional violation." <u>Starr v. Baca</u>, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989)). To be held liable, a supervisor need not be physically present when the alleged constitutional injury occurs nor be "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." <u>Starr</u>, 652 F.3d at 1205 (citation omitted). Rather, the requisite causal connection is established when a supervisor "set[s] in motion a series of acts by others," or "knowingly refus[es] to terminate a series of acts by others which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." <u>Id.</u> at 1207-08 (citation omitted). A supervisor may also be held liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates, . . .acquiescence in the constitutional deprivation," or "conduct that showed a reckless or callous indifference to the rights of others." <u>Id.</u> at 1208 (citation omitted). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." <u>Ivey</u>, 673 F.2d at 268.

In this case, Plaintiff's complaint names Warden Paramo in his individual and official capacities and alleges that Defendant Paramo authorized the denial of Plaintiff's appeal for mental health treatment by Defendant Greenwald. Comp. at 5; Oppo. at 28. Plaintiff does not allege any other facts or actions taken by Warden Paramo indicating Warden Paramo's personal involvement in the alleged violation. <u>See</u> Comp. As such, Plaintiff appears to allege that Defendant Paramo is liable because he is Defendant Greenwald's supervisor. Oppo. at 3. To the extent Plaintiff is alleging that Defendant Paramo is liable merely because he was Defendant Greenwald's supervisor, Plaintiff fails to state a constitutional claim against Defendant Paramo. <u>See</u> <u>Iqbal</u>, 556 U.S. at 676 (citing <u>Monell</u>, 436 U.S. at 691 (1978) (finding no vicarious liability for a "municipal person" under 42 U.S.C. § 1983)).

The Court recognizes that liability may be imposed against a supervisor when the supervisor reviews an inmate grievance, learns of an ongoing constitutional violation, and fails to take corrective action, thereby allowing the violation to continue. <u>See</u> <u>Poulson v. Kirkegard</u>, 2015 WL 5943207, at *5 (D. Mont. Mar. 16, 2015). "If a constitutional violation is complete,

however, and a supervisory grievance reviewer is simply making a determination on whether the prison should provide a remedy for a past violation, the supervisory grievance reviewer has no part in causing the constitutional violation." <u>Id.</u>  Here, Plaintiff does not allege any facts establishing that Warden Paramo reviewed Plaintiff's grievance, learned of an on-going constitutional violation, and failed to act.  Moreover, as set forth herein (<u>infra</u> at 13), Plaintiff has not alleged facts establishing that Defendant Greenwald violated Plaintiff's constitutional rights by acting with deliberate indifference in denying the medical care requested by Plaintiff.

Plaintiff's allegations against Defendant Paramo are conclusory and insufficient.  Plaintiff's complaint identifies Defendant Paramo in the caption and list of defendants, but only generally alleges that Paramo authorized the denial of Plaintiff's request to be transferred to a DSH facility.  Comp. at 5.  The complaint does not clearly and specifically describe what actions Defendant Paramo took or failed to take that caused the alleged violation.  <u>See id.</u>  As such, Plaintiff has not specifically alleged a causal link between Defendant Paramo and the alleged Eighth Amendment violation.  <u>See</u> <u>Henry v. Sanchez</u>, 923 F. Supp. 1266, 1272 (C.D. Cal. 1996) ("A supervisory official, such as a warden, may be liable under Section 1983 only if he was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.").  The Court therefore **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's Eighth Amendment claim of deliberate indifference to his medical needs against Defendant Paramo be **GRANTED**.

2. <u>Defendant Greenwald</u>

Plaintiff alleges that Defendant Greenwald was deliberately indifferent to Plaintiff's serious need for mental health treatment as a sex offender by improperly denying at the second level of review Plaintiff's request to be transferred to a state mental hospital to be treated as an MDSO and to receive a higher level of mental health care.  Comp. at 4, 24; Oppo. at 20.  Plaintiff states that Defendant Greenwald is deliberately indifferent because he "sees what [] Plaintiff is suffering from but does not seem to care and denies the [appeal]."  Oppo. at 24.  Plaintiff acknowledges that Defendant Greenwald considered his grievance and request to be transferred, but denied it after determining that Plaintiff was receiving an adequate level of

mental health treatment and did not meet the criteria to be transferred to a DSH facility.  Comp. at 24.  Plaintiff disagrees with this conclusion and believes that his pedophilia can only be cured by being transferred to a DSH facility.  See Comp.; Oppo.

Defendant argues that Plaintiff fails to state a claim for deliberate indifference because the only conduct attributed to Chief Greenwald is the second-level denial of Plaintiff's grievance. MTD at 10; See Peraltoa v. Dillard, 744 F.3d 1076, 1086 (9th Cir. 2014) (The fact that an administrator signed the denial of the second level appeal does not mean he knew about the Plaintiff's complaints.).  While Defendants generally are correct, a supervisory grievance reviewer can be held liable for a constitutional violation when the violation is on-going and the reviewer's denial allows the violation to continue.  Poulson v. Kirkegard, 2015 WL 5943207, at *5.  Here, reading Plaintiff's complaint liberally as the Court must, Plaintiff has alleged that the constitutional violation consisting of the failure to provide more intensive mental health care and a transfer to a state mental hospital is ongoing and Defendant Greenwald's second level denial permitted the violation to continue.

Defendants also argue that Plaintiff's complaint fails to state a claim for deliberate indifference because, at most, it alleges a difference of opinion as to the appropriate level of mental health care.  MTD at 10.  "[A] difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference."  Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm v. Rotman, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).  "Rather, Plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health."  Wheeler v. Alicesen, 2016 U.S. Dist. LEXIS 136274, at *60 (E.D. Cal. Sept. 29, 2016) (quoting Snow, 681 F.3d at 988) (internal quotation marks and citation omitted).  Plaintiff has not and cannot show the requisite level of misconduct.

As set forth in the Complaint, Plaintiff acknowledges that he has received and continues to receive significant mental health treatment and that he has routine access to mental health

services and clinical staff.  Comp. at 27.  Plaintiff has an IDTT that meets regularly to evaluate Plaintiff's mental health care and it has repeatedly determined that the level of mental health care he was receiving was appropriate.  Id.  Plaintiff's IDTT considered Plaintiff's requested treatment and determined that he did not meet the criteria for such care, including a transfer to a DSH facility, on June 23, 2015, September 18, 2015, and October 16, 2015.  Id.  Further, Plaintiff's IDTT stated that it would continue to evaluate Plaintiff at least every 90 days to ensure that Plaintiff's mental health care treatment was appropriate.  Id. at 23.  Finally, Plaintiff was referred to and attended a California Health Care Facility for sex offender treatment three times.[2]  Oppo. at 31.  As such, Plaintiff's alleged facts establish that he has received and is receiving significant mental health care.  While it may not be the specific care Plaintiff desires, the alleged care is not medically unacceptable and does not constitute deliberate indifference.  Snow, 681 F.3d at 987; Wheeler, 2016 U.S. Dist. LEXIS 136274, at *60.

Plaintiff also has not alleged that Defendant Greenwald consciously disregarded an excessive risk to Plaintiff's health by not transferring him to a DSH facility.  Rather, Plaintiff's Complaint and attached medical records indicate that RJD medical staff routinely evaluated Plaintiff to determine the required level of care to treat Plaintiff's mental health needs and provided significant care.  Comp. at 12-19.  In fact, Plaintiff does not allege any facts indicating that Defendant Greenwald acted inappropriately and with an unconstitutional subjective intent.  See id. at 4.  The fact that Plaintiff disagrees with RJD medical staff, including Defendant Greenwald, is insufficient to state an Eighth Amendment violation.  See Sanchez, 891 F.2d at 242 (finding that differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim).

Because Plaintiff's claim merely alleges a difference of medical opinion and does not allege

---

[2] Plaintiff claims that the mental health treatment he did receive typically consisted of group therapy, but was not specialized.  Oppo. at 31.  However, a failure to provide specialized sex offender therapy does not violate the Eighth Amendment where Plaintiff has access to general therapy programs.  Shultz v. Seals, 200 Fed. App'x 654, 655 (9th Cir. 2006).

unacceptable medical care given with a conscious disregard of an excessive risk to Plaintiff's health, Plaintiff has not established deliberate indifference.  See id.; see also Peraltoa, 744 F.3d at 1086.  Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's Eighth Amendment claim of deliberate indifference to his medical needs against Defendant Greenwald be **GRANTED.**

The facts alleged by Plaintiff in his Complaint establish that he is receiving significant mental health care and that the level and type of care is not unacceptable.  The alleged facts also establish that Plaintiff's IDTT and Chief Greenwald were aware of Plaintiff's desired treatment, considered his request, and denied it after determining it was medically unnecessary.  As such, Plaintiff cannot allege facts establishing either prong of the constitutional violation and cannot state a claim for deliberate indifference regarding his mental health care.  Therefore, the Court recommends that the allegations against Defendants Paramo and Greenwald be **DISMISSED WITH PREJUDICE**.[3]  Ramirez, 334 F.3d at 861 (court may dismiss without leave to amend if the pleading cannot be cured by the addition of other facts).

## B. Fourteenth Amendment Due Process Claims

Plaintiff asserts that the conduct of Defendants Greenwald and Paramo also violated his Fourteenth Amendment rights by denying him sex offender mental health care or transferring him to a DSH facility.  Comp. at 3-5.  Defendants argue that Plaintiff's Fourteenth Amendment claims should be dismissed because any protection afforded prisoners by the Fourteenth Amendment "is more appropriately addressed as a deliberate-indifference claim" under the Eighth Amendment.  MTD at 12.

The exact nature of Plaintiff's Fourteenth Amendment allegations is not clear from the

---

[3] While Plaintiff has not yet served Defendant Lewis and therefore he is not a party to this motion, Plaintiff's allegations against Defendant Lewis are based on the same mental health treatment and the fact that he denied Plaintiff's grievance at the third level of review.  Comp. at 3, 27 (alleging that Defendant Lewis "purposely denied Plaintiff to receive psychological and pshyciatric treatment . . . as a[n MDSO and SVP and denied access to SOCP]" at the third level of review).  Accordingly, the Court recommends that the claims against Defendant Lewis also be **DISMISSED WITH PREJUDICE**.

complaint.  If Plaintiff is alleging that his substantive due process rights were violated, he has failed to state such a claim.  "While the Eighth Amendment governs claims brought by convicted prisoners, the Due Process Clause governs failure-to-protect claims filed by pretrial detainees and civilly-committed individuals."  See Becker v. Cowan, 2008 WL 802933, at *8 (citing Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977) and Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004)).   Because Plaintiff was a convicted prisoner at the time of the allegedly unconstitutional actions, his claims arise solely under the Eighth Amendment.  See Ingraham, 430 U.S. at 671 n.40; see also County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)) (finding that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process").

If Plaintiff is alleging that his procedural due process rights were violated, he also has failed to state such a claim.  The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law.  See U.S. Const. XIV, § 1; see also Becker, 2008 WL 802933, at *9 (citing Wolff v. McDonnell, 418 U.S. 539, 556 (1974)).  A person asserting a violation of the right to due process must first allege facts showing that they were deprived of an interest cognizable under the Due Process Clause or state law.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989); Board of Regents v. Roth, 408 U.S. 564, 571 (1972).  Liberty interests in the prison context are generally limited to freedom from restraints that "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  Even severe hardship does not rise to the level of a constitutional violation unless it is both atypical and significant.  Id.

Here, Plaintiff has not, and cannot, allege facts supporting the existence of any protected liberty interest.  If Plaintiff is arguing that he has a right to specialized mental health treatment for sex offenders, there is no such liberty interest.  See O'Keefe v. Brown, 2013 WL 34702, at *6 (E.D. Cal. Jan. 2, 2013).  The Ninth Circuit has found that prisoners have no liberty interest

in sex offender treatment.  Balla v. Idaho State Bd. of Corrections, 869 F.2d 461, 470 (9th Cir. 1989); Maimon v. Rea, 127 Fed. App'x 295, 296 (9th Cir. 2005) (prisoner had no due process liberty interest in sex offender treatment).  Further, Plaintiff possesses no constitutional right to participate in rehabilitation programs while incarcerated.  Hoptowit v. Ray, 682 F.2d 1237, 1255 (9th Cir. 1982) (no right to vocational course for rehabilitation); Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985).  Similarly, if Plaintiff is arguing that he has a right to be transferred to a DSH facility, there is no such liberty interest.  Kritenbrink v. Crawford, 313 F. Supp. 2d 1043, 1049 (D. Nev. 2004) (finding that Kritenbrink's classification as a sex offender did not create a liberty interest in being housed at a particular facility); see also Meachum v. Fano, 427 U.S. 215, 224 (1976) (holding that prisoners do not have a constitutional right to be housed at a particular institution, even if the degree of confinement differs between institutions).

Plaintiff's substantive due process claim is properly considered under the Eighth Amendment and Plaintiff has not alleged any facts that demonstrate the deprivation of a liberty interest in support of a Fourteenth Amendment procedural due process claim.  This Court therefore **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's Fourteenth Amendment claims against Defendants Paramo and Greenwald be **GRANTED WITH PREJUDICE**.  See Ramirez, 334 F.3d at 861 (court may dismiss without leave to amend if the pleading cannot be cured by the addition of other facts).

### C. **Fourth Amendment Claims**

Plaintiff states that Defendants violated his Fourth Amendment rights by failing to provide him with sex offender mental health treatment.  Comp. at 3-5.  Defendants do not address Plaintiff's Fourth Amendment claims in their motion to dismiss.  See MTD.  Further, Plaintiff does not discuss his Fourth Amendment claims in his opposition.  See Oppo.  The Court will, *sua sponte*, address Plaintiff's Fourth Amendment claim.  See Osborne v. County of Riverside, 385 F. Supp. 2d 1048 (C.D. Cal. 2005) (addressing Plaintiff's Fourth Amendment claim in a 42 U.S.C. § 1983 action *sua sponte*).

"[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed

16cv1126-LAB (BLM)

under the Fourth Amendment and its 'reasonableness' standard." <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989) (emphasis in original).  However, after a person is convicted, the question of whether his confinement is unconstitutional passes over from the Fourth Amendment to the Eighth Amendment's cruel and unusual punishment clause.  <u>Ingraham</u>, 430 U.S. at 671 n.40 ("Eighth Amendment scrutiny is appropriate only after the State has complied with the Constitutional guarantees traditionally associated with criminal prosecutions."); <u>Graham</u>, 490 U.S. at 392 n.6 ("Judge Friendly did not apply the Eighth Amendment's Cruel and Unusual Punishments Clause to the detainee's claim for two reasons.  First, he thought that the Eighth Amendment's protections did not attach until after conviction and sentence.")

Because Plaintiff's alleged constitutional violations arose after his conviction and sentencing, Plaintiff's Fourth Amendment claim is properly addressed under the Eighth Amendment.  As discussed above, Plaintiff's allegations are not sufficient to survive a motion to dismiss under the Eighth Amendment.  Accordingly, the Court **RECOMMENDS** that Plaintiff's Fourth Amendment claims be **DENIED WITHOUT LEAVE TO AMEND**.  <u>See</u> <u>Ramirez</u>, 334 F.3d at 861 (Court may dismiss without leave to amend if the allegation of other facts could not possibly cure the pleading).

### D. **The Court's Jurisdiction to Grant Plaintiff's Requested Injunctive Relief**

Plaintiff seeks two injunctions.  Comp. at 7.  First, Plaintiff seeks an injunction ordering Defendants to transfer him to a DSH facility to be civilly committed for the remainder of his life.  <u>Id.</u>  Second, Plaintiff seeks an injunction ordering Defendants to permit all sex offenders to be psychiatrically evaluated in superior court for possible civil commitment, evaluated once more when placed at a CDCR prison, and to build more DSH facilities to house sex offenders.  <u>Id.</u>; Oppo. at 35-37.  Defendants only address Plaintiff's first request.  MTD at 14.  Defendants contend that they do not have authority to effectuate a transfer from a CDCR facility to a DSH facility, and therefore, the Court lacks jurisdiction to order a transfer.  <u>Id.</u> at 14-15.  The Court will address both of Plaintiff's requested injunctions.

The Court has no power to issue the requested injunctions.  Under Rule 65(d) of the Federal Rules of Civil Procedure, an injunction only binds "the parties to the action, their officers,

agents, servants, employees, and attorneys, and . . . those persons in active concert or participation [with them]." Zepeda v. U.S. I.N.S., 753 F.2d 719, 727 (9th Cir. 1983); Fed. R. Civ. P. 65(d)(2)(A)-(C).  It may issue an injunction only if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim.  Zepeda, 753 F.2d at 727.  According to Plaintiff, CDCR transfers inmates to a DSH facility according to the guidelines set forth by the 2009 Mental Health Services Delivery System Program Guide ("2009 MHSDS Program Guide"). Comp. at 25.  Chapter 6 of the guide provides that CDCR "is responsible for providing acute and intermediate inpatient care, in a timely manner, to those CDCR inmates clinically determined to be in need of such care." MTD, Exh. A ("2009 MHSDS Program Guide") at 25.  Inmate patients can be transferred to a DSH facility, such as Atascadero State Hospital or Coalinga State Hospital – both hospitals that Plaintiff suggests he be transferred to – if a CDCR clinician refers the inmate-patient for treatment at such a facility.  Id.  The inmate-patients must be "so severely disturbed or suicidal that their treatment needs cannot be met in a CDCR treatment program or who may require a comprehensive psychiatric assessment."  Id.  Referrals are made by IDTT if they determine that the inmate-patient meets the criteria for a higher level of care.  Id. at 33.

Plaintiff has not, and cannot, allege that either Defendant Greenwald or Defendant Paramo has the power to transfer Plaintiff to a DSH facility, to require psychiatric evaluations for every sex offender in the superior courts of California and again upon entry into any CDCR facility, or to require California to build more DSH facilities.  Plaintiff's IDTT is not a party to this action.  The Court has neither personal jurisdiction over Plaintiff's IDTT nor subject matter jurisdiction over Plaintiff's request to be transferred to a DSH facility.  The Court therefore, may not issue the requested injunction to transfer Plaintiff to a DSH facility.  Nor can the Court issue Plaintiff's second injunction.  Because Defendant Greenwald and Defendant Paramo do not have the authority to require state-wide psychiatric evaluations of sex-offenders or to require California to build more DSH facilities, and because Plaintiff does not have the legal authority to assert an action on behalf of other prisoners, the Court likewise lacks jurisdiction to issue Plaintiff's second requested injunction.  Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's request for injunctive relief be **GRANTED WITH PREJUDICE**.

1
2

### E.  Defendants' Eleventh Amendment Immunity From Damages in their Official Capacities

3
4
5
6
7
8
9
10
11
12

In his complaint, Plaintiff checked boxes indicating that he is suing Defendants in both their individual and official capacities.  Comp. at 2.  Defendants contend that the Court should dismiss the Complaint under the Eleventh Amendment to the extent that Plaintiff is requesting damages from Defendants in their official capacities.  MTD at 16. Plaintiff recognizes that Defendants are protected by immunity, but states that they can still be liable because they ignored Plaintiff's serious medical needs by not permitting him to obtain reasonable mental health care services.  Oppo. at 2.  However, Plaintiff provides no relevant law supporting his assertion that Defendants are not entitled to Eleventh Amendment immunity.[4]  Id.  To the extent Plaintiff sues Defendants in their official capacities, Defendants are immune from liability for damages under the Eleventh Amendment.

13
14
15
16
17
18
19
20
21
22

"The Eleventh Amendment bars actions for damages against state officials who are sued in their official capacities in federal court."  Dittman v. California, 191 F.3d 1020, 1026 (9th Cir. 1999); see also Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (a suit for damages against a state official in his or her official capacity is really a suit against the state itself, which is prohibited by the Eleventh Amendment).  In other words, a state actor sued in his official capacity is not a "person" subject to suit under Section 1983.  Will, 491 U.S. at 71 n.10. Therefore, the Eleventh Amendment prohibits federal courts from adjudicating claims against a state, unless the state consents or Congress has abrogated the state's Eleventh Amendment immunity.  Id. at 66, 71 n.10.  The only exception to this rule lies when a plaintiff sues official actors for prospective injunctive relief.  Flint v. Dennison, 488 F.3d 816, 825 (9th Cir. 2007).

23
24

Here, Plaintiff requests monetary damages and injunctive relief.  Comp. at 7.  Specifically, Plaintiff seeks $150,000 in compensatory damages and $150,000 in punitive damages.  Id.  As

25

26
27
28

[4] Plaintiff cites to California Government Code § 845.6, which states that a public employee is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.  Cal. Gov. Code § 845.6.  This, however, does not render Eleventh Amendment immunity inapplicable.

16cv1126-LAB (BLM)

discussed above, the Court lacks jurisdiction to grant Plaintiff's request for injunctive relief.  As such, Plaintiff's request for relief is reduced to monetary damages.  Additionally, the State of California has not consented to be sued in federal court for allegations arising under Section 1983.  Brown v. Cal. Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009) (citing Dittman, 191 F.3d at 1025-26).  Therefore, insofar as Plaintiff seeks monetary relief for Defendants' actions in their official capacities, the district court has no jurisdiction over these claims.  Dittman, 191 F.3d at 1026 ("The Eleventh Amendment bars actions for damages against officials who are sued in their official capacities in federal court").  The Court thus **RECOMMENDS** that Plaintiff's claims against Defendants in their official capacities be **DISMISSED WITH PREJUDICE**.

### F.  Defendants' Qualified Immunity from Damages in their Individual Capacities

Plaintiff also sues Defendants in their individual capacities.  Comp. at 7.  Defendants contend that, insofar as Plaintiff sues them in their individual capacities, they are protected by qualified immunity.  MTD at 11.  Plaintiff concedes that Defendants are protected by qualified immunity, but contends that he has a medical necessity that is so serious that qualified immunity should not apply.  Oppo. at 2-3.  Plaintiff further states that qualified immunity does not protect Defendants from injunctions.  Id. at 3.

Qualified immunity shields government officials performing discretionary functions from liability in civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.  Anderson v. Creighton, 483 U.S. 635, 638-40 (1987).  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"  Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  This privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Id. at 200-01 (quoting Mitchell, 472 U.S. at 526).  Thus, the Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  Id. at 201 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)).

16cv1126-LAB (BLM)

Assessing qualified immunity is a two-step process.  Id. at 201.  First, a court must consider whether "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right."  Id. at 201.  Second, the allegedly-violated right must be clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 201-02.  If an officer makes a reasonable mistake as to what the law requires – i.e. the right is not clearly established – the officer is entitled to immunity.  Id. at 202-03.  Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Interpreting the facts in the light most sympathetic to Plaintiff, Defendant Greenwald denied Plaintiff's request to be transferred to a different facility where he could obtain specialized mental health treatment and Defendant Paramo knowingly allowed Defendant Greenwald to do so.  Comp. at 4-5.  As discussed above (supra at 8-14), when the facts are construed in this manner, they do not allege that Defendants Greenwald and Paramo violated Plaintiff's constitutional right to be free from cruel and unusual punishment.  Further, as discussed herein (supra at 8-14), Plaintiff's factual allegations do not state a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment; they merely explain a difference of opinion regarding appropriate or desired care.  As such, the first step of the qualified immunity assessment is not met.  Because the facts taken in a light most favorable to Plaintiff do not allege constitutional violations, Plaintiff's claims do not establish a clearly established right.  It would not be clear to a reasonable officer that denying Plaintiff's appeal to be transferred to a DSH facility for sex offender treatment constitutes unlawful conduct.  Therefore, the second step of the qualified immunity assessment is not met.  Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's claim against Defendants Greenwald and Paramo on qualified immunity grounds be **GRANTED**.

## SUMMARY OF RECOMMENDATIONS

To summarize the foregoing, the Court recommends that Defendant's motion to dismiss

16cv1126-LAB (BLM)

be granted and Plaintiff's complaint be dismissed without leave to amend.  In reaching this recommendation, the Court specifically recommends that:

(1)   Plaintiff's Eighth Amendment claims be dismissed without leave to amend;

(2)   Plaintiff's Fourteenth Amendment claims be dismissed without leave to amend;

(3)   Plaintiff's Fourth Amendment claims be dismissed without leave to amend;

(4)   Plaintiff's request for injunctive relief be stricken;

(5)   Plaintiff's claims against Defendants in their official capacities be dismissed with prejudice; and

(6)   Defendants' motion to dismiss based on qualified immunity be granted.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an order: (1) approving and adopting this Report and Recommendation, and (2) granting Defendants' Motion to Dismiss.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than December 29, 2016**.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with this Court and served on all parties **no later than January 20, 2017**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated:  12/5/2016

Hon. Barbara L. Major
United States Magistrate Judge

16cv1126-LAB (BLM)